by James Angell and Jeffrey Hochstatter, appellant by Roger Boland. Thank you, Mr. Boland. Good morning. Good morning to you. May it please the Court, Counsel, Mr. Angell.   I'm reminded here this morning that sitting on the Court in this venue is somewhat similar to practicing law in a small town, but general practice. This morning this Court has dealt with cases involving former state senator, TIF districts, millions of dollars in benefits and whether someone ought to get paid a benefit. Then we move on to felony murder, and now we will address some issues as it relates to a divorce case. That may sound somewhat more mundane, but I assure you that it is certainly significant to the client. I'm sure it's significant to Mr. Angell's client, but it also embraces some issues that will have, I think, some longstanding impact on our divorce statutes. What we are here today to discuss are two aspects of Judge Hollerich's ruling on a divorce case in Bureau County, which we feel need to be corrected. The first deals with the propriety of a retroactive child support and maintenance order that was entered absent any sort of hearing, pleadings, or notice. The second issue deals with the determination, one way or the other, as to whether the 2017 amendments to the Illinois Marriage and Dissolution of Marriage Act, as it relates to the treatment of depreciation, effected any change in the case law that was in effect prior to those changes. Now, there's a threshold issue that we need to address before we get to the substantive matters, and that is, what is the appropriate standard of review that this Court must employ? We have a little bit of a disagreement between counsel and myself over what standard of review this Court should employ. We suggest that the appropriate standard of review in this case is a de novo standard of review. We believe that because both issues address the construction and the application of provisions of the Illinois Marriage and Dissolution of Marriage Act, and for that reason, the de novo standard of review is required. Our challenges are not fact-based challenges. My reason for that fact, additionally, this is a de novo case. As to the first issue dealing with the retroactive award, we are addressing the application of Sections 501 and 510 of the Illinois Marriage and Dissolution of Marriage Act, and it's the relationship between those two. As to the depreciation issue, we're addressing the interpretation of the 2017 amendments to the statute. I would also point out that in this very Court's opinion in 1996, Pettifer and Mathias, this Court reviewed the issue of a retroactive award on a de novo basis. Now, what happened in this retroactive award? What happened here was Mrs. Hochstetter filed a petition for dissolution of marriage in 2015, late in the year, I think it was in November, and shortly thereafter, there was an agreed temporary order entered that required her husband to pay certain expenses and cash. The total of the obligations was about $1,062 a month. This case was tried about two years later, so we go from November of 15 until August of 17. In that interim, the husband paid all that he was required to pay. Mrs. Hochstetter accepted all that was being required. In that interim, there was no petition to modify that temporary order. In that interim, there was no reservation of any issues as it related to the entry of that temporary order back in November of 2015. The motion for temporary relief was in July of 2015. Did the judge make it retroactive to July? No. When he ordered the agreed temporary order? He did not. That order was entered. In fact, the language of that order specifically mentioned, as it relates specifically to the mortgage payment that he was required to pay, that he was ordered to pay the mortgage payments prospectively. That was because there was a question about whether or not there was a couple months... I don't want to derail your argument, but you've answered my question. Yes, ma'am. Thank you. All right. Now, let's fast forward to the trial that occurred in August of 17. There was no evidence offered by the wife's counsel to support the proposition that that old order ought to be modified. Local rule in Bureau County required the parties to collaborate on a pretrial stipulation. One of those components of that pretrial stipulation was to identify what contested issues existed. When that list was compiled by the work of both attorneys, there was no mention made of a retroactive order of support or maintenance. And so the case was tried without regard to whether there was any retroactive order to be made as to the November 2015 order. The absence of the introduction of any evidence is consistent with the fact that there was no issue identified in the pretrial stipulation on that matter. So the trial occurred, evidence was closed, and the court required some position papers to be filed later. It was then and only then that counsel for the wife raised the question of whether there ought to be a retroactive modification of that order, which by then was nearly three years old. Unfortunately, from my side of the case, the trial court awarded retroactive support and maintenance to the tune of about $28,000. It effectively increased that November 2015 order by about 70 percent. May I interrupt again and just ask what was the retroactive date? Back to the November 2015 order. Not even to the date the motion was filed. That's right. All right. Now, I submit to this court that what took place, and if this court affirms it, we have bad procedure, we have bad policy, and if it is affirmed, it's bad precedent. No modification of that 2015 order was ever solicited. The general rule, certainly as it relates to Section 510, is that you may seek a retroactive modification of an order back to the date of what? Back to the date you filed a petition seeking that relief. That wasn't done here. So there's no question under Section 510 that the law requires a petition to modify a support order. Counsel has suggested that we ought to make some distinction because this order was entered under 501. It was a temporary order. Well, I suggest to you that that's the classic distinction without a difference. There is, in fact, no policy reason that I can think of, and none has been offered by Mr. Angel, to make a distinction when it comes to modifying an order under 510 versus one that was originally entered under 501. I take note of the fact that sometimes, and I had a partner who was a trial court judge for 24 years, and occasionally he would lament the fact that cases would come before him that were not probably right for determination because the issues hadn't been properly framed. Well, if you don't require a pleading or notice, you get that problem. If, on the other hand, a petition to modify is required, as it ought to be, as it clearly is under 510 and ought to be clarified that it's required under 501, you frame the issues. It's in fairness not only to the litigants, but in fairness to the court as to what is at stake and what is at issue. Can you remind me again why you think there is a requirement for a petition to modify temporary support? Is it found in the statute? Is it found based on local rule? Yes. Yes, I think it's in the statute. Now, Mr. Angel suggests that it might not be required here, but we long ago learned in law school that rule of statutory interpretation number one is read on. Mr. Angel cites section 501D, and he talks about how it's not required to have a hearing on a modification of a temporary order because, of course, temporary orders are without prejudice. And that's kind of where he stops in his analysis, and he's reading correctly from the statute. But it goes on. It says that a temporary order does not prejudice the rights of the parties or the child which are to be adjudicated at a subsequent hearing in the proceeding. Part two talks about temporary orders may be revoked or modified before final judgment, reading on, on a showing by affidavit and upon hearing. Now, hearings contemplate pleadings. They contemplate notice and evidence. What was missing in this case was all of that. We go from November of 15 to August of 17. Nothing is said about retroactively increasing that support obligation. Post-trial in a position paper, we now raise that issue, and unfortunately, again, an order was entered. The other problem with this is, again, a general rule that's well accepted in our jurisprudence is that once a support obligation is due, if it's due yesterday, it's vested. Well, when we do what the trial court did here, we call into question that vesting rule. What do you think Mrs. Hochstetter's position would have been had her husband solicited a retroactive reduction in the temporary order? There's no indication in the record that he did not make the temporary payments, correct? That is correct. In fact, everybody stipulates that he did, in fact, make them. So if they hadn't been paid, maybe the argument on your side is a little bit weaker. If they weren't, if he hadn't complied with the court order, that's the way it works. I think that's right. But that isn't the situation. He did. All right. So Mr. Angel also suggested, I think we can embrace this issue on contract principles. I'm going to stop him. These parties came to terms in November of 2015 as to who's going to do what and who's going to get what. They formed a contract. Now, Mr. Angel suggests that that's not really what took place here. But, you know, I happened to read the Blumenfoster case, which is a Supreme Court decision on the question of maintenance. And that court parenthetically noted that in interpreting a marital settlement agreement, that the court can construe that or review that in the same manner as any other contract. Two minutes, please. Now, moving on. There is no marital settlement agreement here, right? I'm sorry? There is no marital settlement agreement. No, it was an agreed court order. All right. Now, let me move on quickly to this depreciation issue because I think that's a very important one. Prior to 2017, the almost uniform determination of the courts of review in this state was depreciation was not available as a deduction in calculating support or maintenance. Along comes the legislature, effective July of 2017, and changes the rules. What was the fundamental basis in all of the courts in denying including depreciation was that the statute included language that indicated that a deduction had to be an expenditure for the repayment of debt. And the case law is, again, almost unanimous that depreciation is not an expenditure for the repayment of debt, and therefore it's not available. In fact, Justice Holdridge, in a special comparing in a 1996 case involving Nelson, you seem to lament the fact that the Supreme Court missed the opportunity to clarify that, and the legislature's language was strained and troublesome, and unless the appellate court wants to act as a super legislature, you were stuck with the language you had. Well, that's been changed because now the language, an expenditure for the repayment of debt, is gone. It's out of there. Let's couple that with the fact that the 2017 amendments added something. And what did they add? The distinction between accelerated and non-accelerated depreciation. I suggest to you that if the legislature was going to leave things alone, all they had to do was say nothing. The legislature is presumed to know what the status of case law is when they adopt legislation. Well, they knew in 2017 that the case law was depreciation isn't generally available, and the courts have said so. What they did then was they eliminated the reason for denying the inclusion of that, and they added the distinction between accelerated and non-accelerated depreciation. So I believe that non-accelerated depreciation is back on the table for the courts to include as a deduction. Now, in my case... Is there a limitation for the purposes of making income, generating income? I'm sorry, ma'am? Is there some sort of language that the depreciation is allowable if it will result in income? If it's necessary for the... if it's an ordinary and necessary expense in the trade or business. The language about generating income was also removed. Aye. Okay, so in my case, the tax returns were admitted into evidence without objection, and Schedule F was included in that. Schedule F lists the income and expenses that Mr. Hochstetter had on his farming operation. There was a total depreciation number there. Form 4562 is also in that return. Form 4562 carves out the accelerated portion of depreciation. That's a Section 179 expense, Section 179 being referenced in Internal Revenue Code. Aye. There was about a $28,000... My watch works slower than yours. Section 179 is the accelerated component. That allows the taxpayer to deduct the expense in the year that the asset was placed in service. The depreciation stretches out generally five years. So I suggest to the Court that depreciation is available as a deduction, and when Judge Hollerick concluded that the legislative changes effected no change in the law, he made a mistake. And for those reasons, we respectfully submit that the two aspects of the decision should be reversed. I have one question. I'm sorry. Don't run away. I'm happy to answer those. I want to ask you this question now because I want counsel to have an opportunity to respond to it. That is, if we find that there's an error below, the lengthy, detailed order that the trial judge wrote says time and time again, well, because there's maintenance, because there's maintenance, I'm doing this and I'm doing that. So what is the remedy if we agree with you? Can you send it back to start all over? Well, you can. I suggest to you, and I did in our brief, that you could reverse the determination as it relates to both the retroactivity, but as to the depreciation, if you rule that that's in the equation, you could order that the income signed by the trial court, which did not include the depreciation, should be recalculated to include that specific number. I suppose then you've got to remand it and then direct that he do certain things. I'm not sure you would be required to reshuffle the entire deck, but. Okay. That's why I want to give counsel an opportunity to respond to it. Mr. Rangel. Thank you. Good morning. May it please the Court, counsel. Mr. Boland has spent the bulk of his time arguing about the retroactive modification regarding maintenance and child support in this case. And the first argument he uses is a contract argument, that basically a tempered order is a contract between the parties. In his brief, he does not cite any authorities to say why this is a contract for a very most likely good reason, because I don't believe there is any cases which say a tempered order is a contract, or maybe cases saying a marital settlement agreement is a contract, but nothing as far as a tempered order. And it also raises some other questions. So if A, an agreed order is the parties are bound by it, as Mr. Boland suggests, but a litigated one is not, then basically what that means is you're going to have temporary matters litigated all the time. What the trial judge says in this case is frequently we have tempered orders because we want to get some child support and maintenance started to often the lesser earning spouse. And we don't want to turn this into a second round of full-blown litigation. And as my partner argued below, if this is going to be binding, then we're going to be litigating every temporary matter. What happened here is the petition for dissolution of marriage was filed in July of 2015. A motion for a temporary relief was also filed at the same time. An agreed order was entered in November of 2015, at which point the parties continued discovery. Part of the reason for getting tempered orders and just agreeing to some amount besides getting support started is the parties often have very incomplete information. So that is often the reason they just agree to amount. And we don't want to have a situation where, okay, every time I get another round of discovery or I get some tax returns, either one party moves to modify it up or one party moves to modify it down based on the latest produced discovery. So one of the reasons for having a temporary hearing without prejudice, as the language of the statute says, is so that we don't have endless litigation and also we don't have gamesmanship. Isn't the purpose of a temporary order really like a temporary restraining order, just to maintain the status quo so nobody starves and assets aren't lost? I mean, Justice Wright, I think that's largely correct. I think it's just to maintain status quo and, like I said, to get... There's some disparity in income, there's children involved, and time is of the essence. So I think everybody that sits on the bench likes to see those agreements as temporary orders because it assists in just maintaining the status quo until everything can be sorted out. Correct, and usually the spouse who needs the income is probably going to be in more of a position to where they need to agree rather than the other spouse. And so they should not be prejudiced later on because they're not in a situation where they have full information or maybe they don't have any income coming in yet to where they can afford to litigate. But also the contract argument, besides if accepted, creating a difference on temporary orders between whether one's agreed to or whether it's litigated, you would raise the issue of breach of contract. So under Mr. Boland's argument, if we have everything paid, there's nothing that can be changed at the final determination, but if it's breached, I don't know if it's breached two times, if it's breached five times, at what point, then it's open for litigation at a final hearing. And Mr. Boland in his reply brief also made an argument that there's no evidence at trial to support a modification. This is all while he's claiming a de novo standard of review. That's more of a manifest weight argument or abuse of discretion, more of a deferential standard of review. Basically what he's saying is there's no argument to support the final order, no argument to support a modification. What he's actually saying, I believe, is that you're stuck with the amount agreed to in the initial modification award unless you can show substantially changed circumstances or other evidence that wasn't available at that time. And that's not how our system works. The courts are pretty clear that a temporary order is supposed to be summary in nature, non-evidentiary hearing to get support started, and it's not supposed to be a hearing where you have a full-blown litigated decision. So what Mr. Boland is actually arguing is that you would have basically you're stuck with a temporary, you're not getting your full day in court. With respect to the thing that wasn't reserved, he makes reference to... Well, is it really a waiver argument to some extent? Mr. Boland? Since you didn't, there wasn't litigation on that temporary order you waived that modification? That we waived the right to modify it? No. I didn't ask whether that was correct. I said, isn't that really what he's arguing and not the way to look at it? Oh, yes, yes, Justice Holder, my apologies. But with respect to the... He did raise the issue that it wasn't reserved in the... I think that's a little bit misleading because the reason attorney fees was reserved is simply because there was no award, so that was being reserved for later determination. Then also he says in the pretrial stipulation the words maintenance and child support weren't... He's saying that the issue of modification wasn't listed, but the words maintenance and child support were listed in there. Was the word retroactive in the pretrial statement? I don't believe it was, but if you're listing the words maintenance and child support as a disputed issue, that's probably a pretty good indication that the parties, or at least in this case my client, the recipient of the temporary order, is not agreeing with that amount for all times and purposes. The judge didn't do the retroactive order corresponding. He relied on an argument that you made. I presume. I haven't read the entire transcript. When did you first raise the issue of retroactivity in the trial court? I don't know whether anything was said at any of the pretrial proceedings or maybe at the time the temporary order was entered. I wasn't trial counsel below, but I do know that it was... I do know for sure it was raised in the position papers, and it was... What date roughly would that be? Would that be in 2017? It would have been whenever they were following their 2017 or 2018, and I believe per... What's a position paper? Position paper basically summarizes the evidence and the... It's just a pretrial comment that's outlined for the benefit of the court to know what issues are going to be litigated, right? That's a pretrial stipulation would outline that, but the position paper is usually filed after a close of evidence and summarizes what the witnesses testify to in the applicable law and the authorities and what you're asking the trial court to do. And also I... So it's basically a written argument at the close of the hearing? That's correct, Justice. I know you weren't involved in the case early on, but did the temporary order reserve the issue of retroactive support or maintenance? I don't know. The word reserved wasn't in there, but as the trial judge said in his decision, this is done all the time. Well, there's a lot of things done all the time in the trial court that maybe shouldn't be done all the time in the trial court, and so I'm a little concerned with the issue of notice and surprise. Well, that's why I bring up that this is a pretty... The trial judge said this is a pretty common practice, so Mr. Boland, this is not his first dissolution of marriage case in Vera County or before Judge Hollerick, so there was ample... But there is a good point to be made that when you file a procedure, the road map is there, and then when you come up on appeal, we have no question about what everybody knew the rules would be. But also the statute says it's without prejudice to a final determination in Section 501, and Section 501 speaks of orders, whereas Section 510 speaks of judgments, and with respect to a 510 modification, then that's... Without prejudice as to a final determination means the final award of maintenance can be more than they agreed on temporarily, but I'm not sure the word retroactive appears in the statute. So here's your chance to help me understand. Right. But my take on it, without prejudice, basically this means that a final determination of maintenance and child support is made at the decision stage, and that can encompass as far back as at least the date the petition was... I understand your argument, but I know when I did this kind of work, I would think, oh, she can live on $900 a month, so... And I think the statute precludes that kind of philosophy from the trial judge. That she can live on... Yeah, she's living very well on $900 a month, so when she's asking for more money, and that's how I view what the statute means about prejudice. But I understand your position, and thank you for helping me sort it out. Okay. Well, and also, one comparison also would be to say it was an unmarried couple, and then it's just you're going to be talking child support, but let's say a temporary order was entered and then, and I don't know whether it returned, whether it was a litigated order or an agreed order, but the parentage statute allows retroactive support to the date of basically the child's birth, and I don't... No, but I think it does create an arbitrary distinction where if it's a married couple, Mr. Boland's essentially arguing you can't go back, whereas there was a situation where you probably would be able to go back, and I don't know whether it would change in a parentage contest whether a temporary order was entered or not. If it did change in that situation, then I suppose an unmarried parent would probably have an obligation. Well, our names are tied. We can't give it by the date of decision. Right. So normally we just focus on the facts in front of us, but I appreciate your thoughts. Thank you. So for those reasons, I believe the trial court was well within their discretion as far as going back on temporary support, and they did give Mr. Oxtober credit for what was paid. This also by knowing that we're going to do a retroactive order makes parties, I think, be a little more honest on what the amount is because if he's underpaid, he knows he's going to have to pay a little bit more. He's going to have to pay more. If she knows he's overpaid, she may have to pay some back. So I think making this without prejudice to when all facts are known has all parties put their cards on the table and take realistic positions ahead of time. With respect to depreciation, while I understand the need to have some guidance on what exactly is allowed, this is probably not the case for it based on what happened below. On appeal, Mr. Boland has cited the tax year 2014 and says $8,488 should be allowed. I think that's page 10 of his opening brief. He did that by taking, I think, there's $28,000 of depreciation subtracting out an amount which was $19,000 and saying just give me the $8,488 as non-accelerated. The problem is in the trial court, I think it's pages C198 to 199, he argues that $35,193 should be allowed for tax year 2016, a totally different year, which would actually have resulted in a loss of about $5,000 for farming income, meaning that Ms. Hochstetter in her trial is effectively subsidizing Mr. Hochstetter losing money at farming. And that's where it was left in the trial court. Now on appeal, he's going with a different amount. But the main reason I believe this is not a case really for saying what depreciation is allowed is because it wasn't proven at trial. Mr. Boland argues that there's ample evidence that how depreciation was shown, but of course in his reply brief he makes no citation and I don't believe he made any of his opening brief. He also argues that farm properties depreciate under the MACRS or MAX system, which stands for Modified Accelerated Cost Recovery System, which means that some part of that is accelerated. And the trial court here in this case said how do I know this isn't accelerated even if it's not 179, section 179, how do I know it's not accelerated because he's not an accountant and frankly neither am I. But this was also a case where, kind of like in Remarriage and Minear in the Supreme Court case where the Supreme Illinois Supreme Court said, well even if depreciation is allowed, he didn't prove it in this case. Mr. Minear's accountant didn't testify, neither did Mr. Hochstetter's. Mr. Hochstetter admitted that there were some deductions that were probably not correct, such as he took 100% when he only owned 50%. Mr. Minear testified that he didn't understand what he was signing. This is also a case where he's reduced acreage. He may be given some items by his parents and then there's also some salvage values. So it's a case where there's probably not really any indication that this is reasonable and necessary for trade expenses and given what was presented to the trial judge, I think he was right in denying what Mr. Hochstetter had asked for below and so for those reasons we'd ask that the trial court be affirmed. Thank you. Thank you. Thank you. Contrary to what Mr. Angel has suggested, this is the precise case for this Court to address the question of depreciation. Frankly, that issue has been something of a troublesome matter for courts of review because I think the rule has herefore been something that's unrealistic as it relates to the real world. What Judge Howard did was determined that the 2017 amendments had no effect on the pre-existing law or case law. That's wrong. That's just wrong. I don't think the legislature added the language and reduced the language for no reason. That was an easy fix. If they were going to do nothing as it relates to depreciation, they had to say nothing. But what they did do was significant. The legislature took away, eliminated what had been the universal reason for denying including depreciation. That's gone. So this Court and no court has the ability to say the depreciation doesn't count because it doesn't constitute the repayment of debt. That arrow is out of the quiver. So, assuming that as a matter of law the trial judge made an error, what about failure of proof or insufficient proof as to what the number should be? Well, let's talk about what the proof was in the record then. 2013 and 2014 tax returns were admitted without objection. Those returns included Schedule F and Forms 4562. Now, I did less than a clear job at oral argument in the trial court because I failed to make the distinction to Judge Howard between the actual numbers between Section 179 expense and the balance of the depreciation. Form 4562, which is of course in the record, makes that distinction. On Schedule F there's a total number. You list the various expenses and it says on the line item depreciation and Section 179 expense. That's a total number. It's about $28,000. When you go to the next page or so in Form 4562, that's where the Section 179 expense, which is the accelerated component of the total, that's carved out. On our returns, in our record, Section 179 expense is about $19,000. I'm using wrong numbers. What the difference is, the $8,400, is the depreciation. Now, farm equipment, as we noted under the Internal Revenue Code, farm equipment is generally depreciated under the MAKERS, it's Modified Accelerated Cost Recovery System. Unless it's $179,000. Unless it's $179,000. It's $500,000. That's the cap, the annual cap. All right. So this taxpayer never reached the cap. He made some elections to partially allocate to $179,000. That left about $8,400. Now, you're not arguing that $179,000 is an expense. He expensed it. That's accelerated. And we noted in our reading, that's not available for purposes of reducing your gross income. I can see that. That would be the accelerated component, which the legislation now says you cannot count. But the non-accelerated component, which you now can count, was about $8,400, $8,500. Now, the Modified Accelerated Cost Recovery System places farm equipment in class lines. Generally, it's five years. Sometimes it's seven. And they are then depreciated using a straight line method. The two cases that allow depreciation prior to the 2017 amendments talked about allowing the depreciation on a straight line basis. And that's what MAKERS does. It sticks a tractor or combine into a five-year category, and you take the expense over that five years. That is non-accelerated. But wasn't there a shared responsibility on the farm? I'm sorry? Your client took 100% of the depreciation over five years? If he owned the equipment. There is no real dispute over whether the amount of the depreciation, that total, is erroneous or not. He doesn't He had a relationship with his father, yes. He didn't do that. He didn't do that. Mr. Angel doesn't dispute from the 2014 and 2013 returns, which are the returns used by the court in the record, particularly the 14, that there was $179,000 expense for roughly $19,000 and depreciation for about $8,000. He does not suggest that those numbers are in any way in error. What he has suggested is, in some prior arguments, I used the total number. And for that I take responsibility. But the record is clear on what was and what was not accelerated. Now was there a question as to what property might have been gifted from his father that he was taking depreciation on? Not to my recollection. And even if he received a gift, that would maybe affect the amount. I'm not saying you can depreciate a gift unless you've treated that somehow in some way as a purchase. But that's not in the equation here either. He hasn't suggested that my numbers are wrong or that the tax returns were wrong. They were prepared by CPA. Now, briefly again as it relates to this retroactive... So your argument is you should have been allowed the $8,000? Yes. Now what does MACR stand for? Modified Accelerated Cost Recovery System. So it is accelerated. Well, to the extent that it sticks an asset in a class life of personal property, 5-year or 7-year. Farm equipment is almost always a 5, sometimes a 7-year class life. Which is acceleration over a straight line depreciation whose life of the asset is how many years? That would depend based on... It's usually about 10. Well, given the cost of new equipment, let's hope so. 50 on fence. Could be. Although in Western Bureau County, you go a long way before you find any fence left. I understand, but it's still there in the code. Yes, you are absolutely correct. Policy issue as it relates to retroactive support and maintenance. Mr. Angel suggests that if you change what Judge Hollery did, you're going to cause all kinds of policy problems. I assure you that is exactly the opposite effect. If you permit to stand what happened, where there was a temporary order and a trial and nothing in between, no motion, no hearing, no notice, and then after the evidence is closed, that's when the physician paper gets filed. After the evidence is closed, you raise the issue and you ask the court to change things. You will ensure that litigants litigate the temporary order. Why? That's going to be their only chance to get any evidence in because what Judge Hollery did was he increased the amount of support on a retroactive basis without a petition and without a hearing. If we litigate what is going to be the obligation on a temporary basis, if we do more litigating there, at least we're going to get a hearing and there's going to be evidence and it's going to be from both sides. What happened here was an aberration. I don't dispute the entry of the temporary order. What I dispute and believe is bad policy and bad law is the increase in that number without the filing of a petition, without any notices to what's going on, and without any evidence. Judge Hollery heard zero to support a retroactive order. He heard something as it relates to prospectively. And again, that's why counsel at trial never introduced any evidence to support a retroactive order because there was not an issue on that. It was an afterthought. And that's why if we let stand what happened here, we risk the just because result. We'll throw that in in a position paper after the evidence is closed and maybe a judge will change the number up or down, just because. And that's bad policy. And it isn't necessary. Thank you. Thank you, Mr. Fuller. We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand and brief us for a panel change.